25CA0486 Marriage of Mill 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0486
Mesa County District Court No. 22DR30003
Honorable Daniel M. Garcia, Magistrate

---

In re the Marriage of

Allicia Anne Mill,

Appellee,

and

Brian K. Mill,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

Price Family Law, LLC, Trista Price, Denver, Colorado, for Appellee

The Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

¶ 1    In this proceeding concerning the dissolution of marriage between Brian K. Mill (father) and Allicia Anne Mill (mother), father appeals the district court's permanent orders with regard to division of the marital estate, child support, and parental responsibilities. We affirm in part, reverse in part, and remand the case to the district court for additional proceedings.

## I.    Background

¶ 2    The parties were married in June 2011.  Mother had an eight-year-old son from a prior relationship.  In 2013, the parties had a daughter.  Mother, who was a family nurse practitioner at Colorado West Healthcare Center, formed a medical aesthetics business during the marriage.

¶ 3    Mother filed for dissolution of marriage in January 2022.  A magistrate entered temporary orders in September 2022.  During this time, mother left her employment at the healthcare center and began working at her business full time.  The permanent orders hearing was initially scheduled for April 2024.

¶ 4    Before the April permanent orders hearing, father filed a motion to compel seeking copies of mother's initial and supplemental mandatory financial disclosures.  After mother

provided many disclosures, father replied, alleging that more documentation was outstanding.  The court denied father's first motion to compel, agreeing with mother that father had failed to confer in good faith.  Father then filed a second motion to compel.

¶ 5     At the April permanent orders hearing, the court asked father's counsel to enumerate which disclosures remained outstanding.  Father's counsel responded, "Most of [mother's] debit documentation related to her credit cards [is] incomplete"; and counsel said that statements from mother's "Bellco accounts" and her monthly Square statements were missing — although her annual Square statements were filed.  The court then reset the permanent orders hearing for July 2024.  It extended discovery deadlines and the exhibit submission deadline.  And it set a status conference to monitor discovery.

¶ 6     The minute order from the status conference indicated that the parties needed to provide any outstanding discovery by the end of that week.  Father provided a list of outstanding discovery and filed a motion asking the court to rule on his second motion to compel.  Later, during the permanent orders hearing, father

2

testified that he wanted the court to rule on the motion to compel. The court never did.

¶ 7     Also during the permanent orders hearing, the court heard testimony and considered a report from a child and family investigator (CFI).  The CFI made recommendations regarding parenting time that the court adopted as part of its permanent orders.  The court issued written permanent orders in January 2025.

## II.     Motion to Compel Discovery

¶ 8     Father argues that, because the court didn't rule on his second motion to compel discovery, he "lacked information necessary to evaluate the marital estate and calculate income for purposes of support."  He asks us to treat the court's failure to rule as a denial and evaluate it for an abuse of discretion.  We perceive no basis for reversal.

## A. Preservation

¶ 9     As an initial matter, we reject mother's assertion that father's claim is unpreserved and we should therefore not review it.[1]

¶ 10     First, the record belies mother's argument that the court fully addressed father's requests for discovery at the April permanent orders hearing. To be sure, during that hearing, the court repeatedly acknowledged the outstanding discovery. But after asking father's counsel to reiterate what remained outstanding, the parties began arguing a subpoena issue and didn't return to the previous discussion. And the court ultimately continued the hearing so that the parties could remedy discovery.

¶ 11     Second, as we have already discussed, the record shows that father repeatedly brought to the court's attention that it hadn't ruled on the second motion to compel. When a district court doesn't rule on a motion, it may be considered implicitly denied. *Bd. of Cnty. Comm'rs v. Kobobel*, 74 P.3d 401, 404 (Colo. App. 2002).

---

[1] We disagree with mother's argument that father's second motion to compel was untimely. *See City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 610 (Colo. 2005) (district court has discretion to exclude untimely disclosed evidence).

## B. Relevant Law and Standard of Review

¶ 12    "Parties to domestic relations cases owe each other and the court a duty of full and honest disclosure of all facts that materially affect their rights and interests and those of the children involved in the case." C.R.C.P. 16.2(e)(1). If a party fails to make a disclosure or fails to respond to discovery, the other party may move to compel disclosure. C.R.C.P. 37(a).

¶ 13    "[A] motion to compel discovery is committed to the discretion of the trial court and the court's determination must be upheld on appeal absent a clear abuse of discretion." *Silva v. Basin W., Inc.*, 47 P.3d 1184, 1188 (Colo. 2002). A district court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 2012 CO 30M, ¶ 19.

## C. No Abuse of Discretion

¶ 14    The court didn't abuse its discretion by denying father's second motion to compel because the record demonstrates that mother made disclosures responsive to almost all requests made in that motion.

¶ 15    In addition, father hasn't demonstrated prejudice from the court's presumed denial of his second motion to compel. *See* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Father didn't proceed to the July permanent orders hearing without first receiving relevant financial information from mother. And while he asserts on appeal that three of his trial exhibits didn't contain all of the apparently disclosed documentation, he didn't assert at trial that these exhibits were deficient. *See Core-Mark Midcontinent Inc. v. Sonitrol Corp.,* 2016 COA 22, ¶ 24 ("We do not consider 'arguments never presented to, considered or ruled upon by' the district court." (citation omitted)).

¶ 16    Similarly, on appeal, father states that he couldn't "obtain from [mother] documentation of [her] debts and documentation about her business," but he didn't specifically articulate — before the district court or on appeal — how the provided information didn't satisfy his motion to compel or sufficiently inform him of mother's business debts and documentation. We therefore decline to disturb the court's denial on this basis. *See Barnett v. Elite*

6

*Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (acknowledging that appellate courts don't address undeveloped arguments).

D.    Additional Arguments Regarding the Second Motion to Compel

1.    Storage Unit

¶ 17    Father argues that, despite his "formal discovery requests" regarding the contents of shared storage unit used during the marriage, mother didn't respond.  But the record doesn't support father's claim.

¶ 18    Father requested, as part of his nonpattern interrogatories listed in his second motion to compel, that mother "account for the marital assets from the storage unit . . . , including the location of where the assets are located and a description of any assets [mother] has sold to date."  The record shows that mother responded, indicating that the belongings she removed from storage after this case began belonged to her, her son, and the couple's daughter.  She admitted that she had a "small amount of [father's] pictures, clothes, and documents" at her home.

¶ 19    On this record, we can't say that the court erred by effectively denying father's second motion to compel as it related to the property in the storage unit.

### 2. Income for Child Support Determination

¶ 20    Father argues that the court erred by determining mother's income without the "documentation related to her business and income from her business" that father had requested in his second motion to compel. We disagree.

¶ 21    As previously discussed, the record indicates that mother responded to almost all requests in the second motion to compel. Father didn't indicate before the district court, nor does he on appeal, how the information that mother provided was insufficient to "assess the nature of [her] debts, calculate a value of [her] business, and determine [her] actual income from her business." Moreover, because the court's conclusion that mother was able to earn at least $11,100 in monthly income is supported by the record, we perceive no abuse of discretion.

## III. Division of Marital Estate

### A. Relevant Law and Standard of Review

¶ 22 A district court has great latitude in equitably dividing a marital estate in such proportions as it deems just. *See* § 14-10-113(1), C.R.S. 2025; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 23 Before dividing a marital estate, a court must determine whether an asset is marital or separate. *See* § 14-10-113(1); *In re Marriage of Corak*, 2014 COA 147, ¶ 9. Marital property is subject to division and includes the appreciation of a spouse's separate property during the marriage. § 14-10-113(4); *see In re Marriage of Krejci*, 2013 COA 6, ¶ 13. The court must value marital property as of the date of the decree or the date of the hearing on disposition of property if such hearing precedes the date of the decree. § 14-10-113(5); *see In re Marriage of Wright*, 2020 COA 11, ¶ 4. It's the parties' duty to present the court with the data to allow it to make a sufficient valuation, and any failure by the parties in that regard doesn't provide them with grounds for review. *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003).

¶ 24    Valuing property is within the district court's discretion, and the court's determination will not be disturbed on appeal if it is reasonable in light of the evidence as a whole. *Krejci*, ¶ 23. The court may select the valuation of one party over that of the other party, or make its own valuation, and its decision will be upheld on appeal unless clearly erroneous. *Id.* "A court's finding of fact is clearly erroneous if there is no support for it in the record." *Gagne v. Gagne*, 2019 COA 42, ¶ 17.

### B.    Edward Jones Retirement Account

¶ 25    Father argues that the district court improperly set aside mother's Edward Jones portfolio, which was valued at $84,100, as her separate property. We disagree.

### 1.    Preservation

¶ 26    Mother argues that father didn't preserve this issue for appeal. But "a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings." *People in Interest of D.B.*, 2017 COA 139, ¶ 30.

### 2.    Analysis

¶ 27    The record supports the court's determination of mother's separate property. Mother's Exhibit 28C indicates that four months

after the marriage, in October 2011, her retirement account contained $84,100. In addition to statements for several accounts within the portfolio showing balances as of the date of marriage, the exhibit also includes documents that trace $50,000 from mother's pre-marriage retirement funds. And the court, which had great latitude to do so, credited mother's testimony that she believed that the entire portfolio was her separate property. *See Krejci*, ¶ 23.

¶ 28 Because the record supports the court's determination that the portfolio was mother's separate property, we will not disturb it on appeal. *Gagne*, ¶ 17.

### C. Valuation of the Storage Unit Property

¶ 29 Father asserts that the court erred when it "failed to value" the property mother retrieved from the parties' storage unit, arguing that the property was marital. But the court "place[d] no value on any marital items that may or may not have been located in the storage unit" because "the items in [m]other's possession are now her . . . separate property, with zero value, and the items remaining in the storage shed are the . . . separate property of [f]ather, also with zero value." The record supports the court's determination

11

that the property mother retrieved from the storage unit was her separate property and that it held no value.

¶ 30 First, the court relied on mother's testimony regarding the separate character of the property. The court found father incredible when he claimed that mother destroyed property, took marital property, and took his separate property from storage. The court didn't believe father that, after mother removed items, "most of the belongings and assets" were no longer in storage. Instead, the court credited mother's testimony that the couple's home goods had been in the storage unit and that she removed only "[her] stuff and the kids' stuff," leaving all other assets behind. And evidence indicates that father considered the property to be mother's — he extolled her to pay the storage unit fee for "her stuff." Second, the record supports the court's determination that the property had no value. Although both father and mother valued the property in the storage unit before mother's removal at $80,000, the court wasn't obligated to accept this valuation. *See In re Marriage of Wenciker*, 2022 COA 74, ¶ 26; *see also In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well

12

as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court."). Father admitted that what was left there was "garbage" and "nothing but junk."

¶ 31 Given this record evidence, the court's valuation of this property wasn't clearly erroneous.

## IV. Child's Air Travel

¶ 32 Father argues that the court erred by ordering him to pay the entire cost of the child's air travel to facilitate parenting time exchanges between the parties in violation of section 14-10-115(11)(a)(II), C.R.S. 2025. We agree that the court's child support determination must be recalculated.

### A. Relevant Law and Standard of Review

¶ 33 Under section 14-10-115(11)(a)(II), any expenses for transporting a child, or a child and accompanying parent if the child is under twelve years old, between the parents' homes for parenting time "must be divided between the parents in proportion to their adjusted gross income." *See In re L.F.*, 56 P.3d 1249, 1250-51 (Colo. App. 2002) (the statute's provisions are mandatory). These amounts are then added to the parents' respective obligations

13

in computing child support. *In re Marriage of Andersen*, 895 P.2d 1161, 1163 (Colo. App. 1995) (interpreting an earlier version of section 14-10-115(11)(a)(II)).

¶ 34    We review a court's child support orders for an abuse of discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶¶ 12, 21, 27.

### B.    Analysis

¶ 35    At the time of the permanent orders hearing, father resided in Texas and mother in Colorado. The court granted father parenting time at his home out of state. The court then made father "responsible for costs associat[ed] with air travel for the child."

¶ 36    In the court's final orders, it incorporated a child support order filed in February 2025. That order required father to pay mother $778 in monthly child support. But the court provided no indication of how it applied section 14-10-115(11)(a)(II) when considering child support. The court, therefore, abused its discretion.

¶ 37    On remand, the court must apply section 14-10-115(11)(a)(II) in conjunction with its child support determination. In doing so, the court may, in its discretion, reconsider the overall child support calculation.

14

V.    Father's Child Support and Parenting Time Overnights

¶ 38    Father argues that the court erred by ordering child support using worksheet A without making findings as to how it calculated overnight parenting time with father.  We disagree.

A.    Record on Appeal

¶ 39    Mother argues that, because the record doesn't contain the court-ordered parenting plan, we need not address father's contention and "must assume it supports the trial court's findings and orders."  *See* C.A.R. 10(b), (c); *see also People v. Duran*, 2015 COA 141, ¶ 12 ("If an appellant intends to urge on appeal that a finding or conclusion is unsupported by or contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion.").  But the court-ordered parenting plan is available on the judicial department database, JPOD, and we take judicial notice of it.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (court of appeals may take judicial notice of its own records and the contents of court records in a related proceeding).

¶ 40    In addition, the proposed parenting plan order, which is included in the record before us, was later adopted in full by the

15

magistrate in a parenting order.  This order uses language identical to the CFI report adopted by the court in its permanent orders and includes the number of overnights determined by the court.  We can, therefore, proceed to the merits of father's argument.

B.     Relevant Law and Standard of Review

¶ 41     "Shared physical care" means that each parent has the children "for more than [ninety-two] overnights each year" and that both parents contribute to the children's expenses in addition to paying child support.  *In re Marriage of Antuna*, 8 P.3d 589, 596 (Colo. App. 2000).  When the parties share physical care, an adjustment is made to the basic support obligation because certain basic expenses for the children will be incurred by both parents.  *Id.*; § 14-10-115(8)(b).

¶ 42     To account for this adjustment, worksheet B, rather than worksheet A, is used to calculate child support when shared physical care exists.  Worksheet A is used when one parent is the primary residential parent such that the other parent has ninety-two or fewer overnight visits with the child each year.  *See Antuna*, 8 P.3d at 596.

¶ 43    We defer to the district court's factual findings unless they are clearly erroneous. *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9. The district court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its decision. *Wright*, ¶ 20; *see also In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997) (reversing where the district court's findings and "reasoning [were] unclear and d[id] not permit meaningful appellate review").

### C.    Analysis

¶ 44    The court found that father would have ninety-two overnights per year and, therefore, used worksheet A to calculate child support. According to the permanent orders, the court based this calculation of overnights on the description of parenting time parameters provided in the CFI report. The CFI recommendations give us a clear understanding for the basis of the district court's determination, *Wright*, ¶ 20, and because these parameters resulted in father having ninety-two nights of parenting time, the court properly used worksheet A. *See Antuna*, 8 P.3d at 596.

### VI.    Parental Responsibilities

¶ 45    Father argues that the court abused its discretion when it allocated mother sole decision-making responsibility despite

evidence that mother committed acts of domestic violence toward father. We disagree.

### A. Relevant Law and Standard of Review

¶ 46    In allocating parental responsibilities, a district court must focus on the children's best interests, prioritizing their safety and physical, mental, and emotional conditions and needs. *See* §§ 14-10-123.4(1)(a), -124(1.5), (1.7), C.R.S. 2025;[2] *In re Marriage of Pawelec*, 2024 COA 107, ¶ 43. For decision-making responsibility specifically, the district court must consider the factors in section 14-10-124(1.5)(a), plus the three additional factors in section 14-10-124(1.5)(b). *In re Marriage of Morgan*, 2018 COA 116M, ¶ 21.

¶ 47    If the court has reason to believe that a party has committed domestic violence, the court must follow section 14-10-124(4) when allocating parental responsibilities. § 14-10-124(1.5)(a), (b). Under this subsection, if the court finds by a preponderance of the evidence that a party has committed domestic violence, it must consider the children's best interests under section 14-10-

_____

[2] The best-interests-of-the-child statute was recently amended. *See* Ch. 163, sec. 3, § 14-10-124, 2026 Colo. Sess. Laws 971. Throughout this opinion, we refer to the version of the statute in effect before the May 27, 2026, changes.

124(1.5)(a) and (b) in light of that finding. *See* § 14-10-124(4)(a)(II), (b), (d). Domestic violence "means an act of violence or a threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship." § 14-10-124(1.3)(b).

¶ 48 A district court has broad discretion in allocating parental responsibilities, and we exercise every presumption in favor of upholding its decision. *See In re Marriage of Collins*, 2023 COA 116M, ¶ 8 (parenting time); *Morgan*, ¶ 23 (decision-making responsibility). We won't disturb the court's decision unless it abused its discretion. *See Collins*, ¶ 8; *Morgan*, ¶ 26; *In re Marriage of Dale*, 2025 COA 29, ¶ 7, *aff'd*, 2026 CO 35.

### B. Analysis

¶ 49 Each party argued that the other was abusive. The court found, by a preponderance of the evidence, that father committed domestic violence through acts of coercive control. § 14-10-124(1.3)(a) (defining coercive control). Specifically, the court found father's communications to mother and his threat to have her assets auctioned off were examples of coercive control. The court did "not find that it has been proven by a preponderance of the

19

evidence that [m]other has committed acts of domestic violence against [f]ather." These findings are supported by the record.

¶ 50 The CFI report characterized father's communications with mother as "threat[ening], demeaning, and . . . intimidati[ng]." The report differentiated between these communications and mother's, which were "uncivil, although to a lesser extent." The CFI also testified that father's "poor ability to communicate" was more pronounced than mother's.

¶ 51 Because the evidence supports the court's determination that father had committed domestic violence but mother hadn't, we perceive no abuse of discretion with the court's decision allocating sole decision-making responsibility to mother.

## VII. Mother's Attorney Fees

¶ 52 Mother requests her appellate attorney fees under C.A.R. 38(b) because father's appeal was frivolous. An appeal may be frivolous as filed or as argued. *Calvert v. Mayberry*, 2019 CO 23, ¶ 45. An appeal "is frivolous as filed when there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position so clear.'" *Id.* (citation omitted). If there are legitimately appealable

issues, then "an appeal may still be frivolous as argued if the appellant 'fail[s] to set forth . . . a coherent assertion of error, supported by legal authority.'" *Id.* (citation omitted).

¶ 53    Though we have ruled, in part, against father, we don't view his appeal as frivolous, either as filed or as argued, so we deny mother's request. *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## VIII. Disposition and Remand Instructions

¶ 54    We affirm the judgment in part and reverse it in part. We reverse the district court's order regarding child support and remand for the court to reconsider its child support ruling related to travel expenses. The district court must allow the parties to present evidence of their financial circumstances at the time of the remand hearing, and if, in its discretion, it makes a new child support determination, that determination must be based on the parties'

and the child's present circumstances at the time it enters its rulings on remand. *See Wright*, ¶ 24. The court must also follow the procedures of section 14-10-115 and make the necessary factual findings to provide an appellate court a clear understanding of the basis of its determinations. *See id.* at ¶ 23.

¶ 55 In all other respects, the judgment is affirmed.

JUDGE PAWAR and JUDGE SULLIVAN concur.